## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
Geoffrey D. Ray                                         )
4343 Warm Springs Road, Apt. 1518     )
Columbus, Georgia  31909,             )
                                             )
            Plaintiff.             )
                                             )
      v.                             )  Case No.:  1:16-CV-00726
                                             )
Patrick J. Murphy,                   )
in His Official Capacity As the Acting Secretary of the Army )
101 Army Pentagon                 )
Washington, D.C.  20310,          )
                                             )
            Defendant.           )
_____ )

## **COMPLAINT**

### Nature and Summary of Action

1.  Plaintiff Geoffrey D. Ray files this action against Defendant Patrick J. Murphy, in his official capacity as the Acting Secretary of the Army seeking:  (a) in Count I equitable, injunctive or declaratory relief under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* consisting of an order directing the Acting Secretary of the Army, acting through the Army Board for Correction of Military Records ("ABCMR"), to correct Mr. Ray's military records to reflect that he was:  (1) separated from the United States Military Academy at West Point ("USMA") for medical reasons; (2) discharged from the Army with an Honorable discharge certificate; (3) placed on the Temporary Disability Retired List with a disability rating of 75 percent effective February 13, 2013; and (4) not in breach of an express contract with the United States such that the cost of his USMA education was subject to recoupment by the United States; and (b) in Count II monetary relief in the nature of contract damages under the Little Tucker Act,

28 U.S.C. § 1346(a)(2), not to exceed $10,000, consisting of a refund of the amounts of money erroneously paid by Mr. Ray for his alleged debt to the United States arising from the Army's breach of an express contract with Mr. Ray entered into at the time of Mr. Ray's appointment as a USMA cadet.

The Parties

3.   Plaintiff Geoffrey D. Ray is a resident of the State of Georgia at 4343 Warm Springs Road, Columbus, Georgia  31909.

4.   Defendant Patrick J. Murphy is the Acting Secretary of the United States Army and has served in that position continuously since January 11, 2016.  The United States Army is a military department and agency of the United States of America.

Jurisdiction and Venue

5.   This Court has jurisdiction over Count I of this action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* because Mr. Ray challenges as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and unsupported by substantial evidence the ABCMR's final agency action on January 21, 2016, denying Mr. Ray's application to the ABCMR for the correction of his military records regarding his separation from the USMA, his discharge from the Army, and the Army's decision to recoup his USMA educational expense.  This Court has jurisdiction over Count II under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), because Mr. Ray seeks monetary relief for contract damages, not to exceed $10,000, consisting of money he erroneously paid to the United States resulting from the Army's breach of an express contract with Mr. Ray and its wrongful recoupment from Mr. Ray of his USMA educational expense.

6.   Venue is proper in this district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Mr. Ray's claims occurred before the Department of the Army, the Office of the Secretary of the Army, or the ABCMR in Washington, D.C., and the Acting Secretary of the Army performs a significant amount of his official duties in Washington, D.C.

Factual Background

7.   Mr. Ray was appointed a cadet at the USMA on June 30, 2008, as a member of the USMA Class of 2012.  On that date he signed an express contract with the Army (the "USMA service agreement").  Under the USMA service agreement, Mr. Ray agreed that if he failed to complete the course of instruction at the USMA due to his breach of the agreement, he was subject to various remedies including recoupment by the United States of the cost of Mr. Ray's USMA education.  The USMA service agreement explicitly incorporated by reference as part of its terms and conditions various Department of Defense and Army regulations that the Army was obligated to follow.

8.   On May 7, 2010, Mr. Ray was disciplined under USMA cadet regulations for unauthorized possession of alcohol and for a violation of the Cadet Honor Code.  On October 6, 2010, the Superintendent of the USMA approved the findings of a Cadet Advisory Board that Mr. Ray had violated the Cadet Honor Code.  The Superintendent "turned back" Mr. Ray to the Class of 2013 with graduation in May 2013, and placed Mr. Ray in a suspended separation status until his graduation contingent upon adherence to the terms of the suspended separation.  One of those terms was that Mr. Ray could not receive an individual award of 35 demerits as a result of a violation of USMA cadet regulations.

9. Mr. Ray was placed on administrative leave from the USMA until May 2011, and joined the Class of 2013 at the USMA in August 2011.

10. In March 2012, Mr. Ray experienced severe symptoms of depressive disorder with suicidal ideations. He was admitted for treatment at a civilian hospital in New York for two weeks of inpatient behavioral health treatment, where he was diagnosed with depression and idiopathic thrombocytopenic purpura.

11. Based on the diagnoses of depression and idiopathic thrombocytopenic purpura, on April 9, 2012, the USMA Corps of Cadets Surgeon, Dr. Timothy J. Switaj, recommended to the Commandant, USMA Corps of Cadets that Mr. Ray be placed on a Medical Leave of Absence until August 2012, in order to receive continuing treatment.

12. On April 24, 2012, prior to departing on his medical leave of absence, Mr. Ray consumed alcohol with other cadets on the USMA reservation and subsequently swore at and made inappropriate gestures to an Army captain, who was performing duties as the "officer-in-charge" at that time. A Commander's inquiry concluded that Mr. Ray violated the USMA disciplinary code for cadets by engaging in unsatisfactory behavior and committing an error in judgment. In a memorandum dated April 26, 2012, Mr. Ray's tactical officer, Major Patrick L. Soule, recommended to his superiors in the USMA tactical officer chain-of-command that Mr. Ray's actions should be subject to a cadet disciplinary review known as a "Brigade board." In addition, Major Soule stated in the memorandum:

> Cadet Ray is currently approved to depart the academy on a medical leave of absence (MLOA) that would allow him to receive the proper treatment for behavioral health and low blood platelet issues. His MLOA has been approved by the Superintendent and he could depart the academy within 24 hours once we issue his orders. I recommend that we allow Cadet Ray to depart on MLOA so that he can receive the necessary treatment. If he is cleared to return to duty following the MLOA his actions for this incident could be adjudicated then. This is in the best interests of the Academy, the company, and the Cadet.

*       *       *

> CDT Ray is currently on suspended separation after being found on honor during
> term 11-1. If CDT Ray receives a Brigade board the suspended separation could
> be vacated and he could be separated from the Academy. While Cadet Ray has
> shown a consistent pattern of misconduct he does have significant medical issues
> that need to be addressed. Moving forward with the disciplinary process prior to
> addressing his underlying medical conditions would not be in the best interests of
> the Academy or the Cadet.

13. On April 27, 2012, Olanrewaju Somorin, a military health care provider from the

USMA Psychiatric Clinic, diagnosed Mr. Ray with alcohol dependence, depression (not

otherwise specified) and idiopathic thrombocytopenic purpura.

14. Mr. Ray began his medical leave of absence on or about April 30, 2012, by returning

to the San Antonio, Texas area to live with his parents. During that time, Mr. Ray received

treatment from military health care providers at the Brooke Army Medical Center in San

Antonio, Texas. Mr. Ray's medical treatment records reflect that between May 4, 2012, and

August 8, 2012, military health care providers at Brooke Army Medical Center repeatedly

diagnosed Mr. Ray with idiopathic thrombocytopenic purpura, depression, and alcohol

dependence or alcoholism.

15. Mr. Ray returned to the USMA from his medical leave of absence in or about August

2012. Mr. Ray's medical treatment records dated August 10, 2012, reflect notes by Dr. Joshua

Hain at the Psychiatric Clinic at Keller Army Community Hospital at West Point, New York

diagnosing Mr. Ray with depression, alcohol dependence, and idiopathic thrombocytopenic

purpura.

16. Mr. Ray's medical treatment records dated August 10, 2012, reflect a note dated

August 13, 2012, by Dr. Luke Janowiak at Keller Army Community Hospital at West Point,

New York, in which Dr. Janowiak advised Mr. Ray that due to his chronic idiopathic

thrombocytopenic purpura diagnosis, Mr. Ray would require a waiver of that medical condition in connection with his commissioning physical: "Discussed that the service member will have a waiver applied for in the spring when he gets his Commissioning Physical Exam."

17.   On August 14, 2012, Mr. Ray was subject to a Brigade board disciplinary proceeding related to his consumption of alcohol and his swearing and making of inappropriate gestures to the officer-in-charge on April 24, 2012.  Mr. Ray received 35 demerits among other administrative punishment, which was approved on August 28, 2012.

18.   Mr. Ray's medical treatment records dated August 23, 2012, reflect Dr. Joshua Hain's diagnosis of Mr. Ray as suffering from "Adjustment disorder with depressed mood" and "Alcoholism."

19.   Mr. Ray's medical treatment records dated September 6, 2012, reflect Dr. Joshua Hain's diagnosis of Mr. Ray as suffering from depression, alcohol dependence, and idiopathic thrombocytopenic purpura.

20.   Mr. Ray's medical treatment records dated September 17, 2012, reflect notes by Dr. Janowiak, who stated:  "Patient presents for commissioning physical.  Electronic medical records and hard copy medical records were reviewed.  Noted in records are diagnosis of thrombocytopenia and ETOH [alcohol] dependence.  Both of which will need a waiver per AR [Army Regulation] 40-501.

21.   Mr. Ray's medical treatment records dated September 25, 2012, reflect notes by a medical provider that Mr. Ray was diagnosed with "Alcohol Dependence (Alcoholism)."

22.   Mr. Ray's medical treatment records dated September 27, 2012, reflect notes by Dr. Joshua Hain in the Psychiatric Clinic at the Keller Army Community Hospital at West Point,

New York, reflecting a diagnosis of depression, alcohol dependence, and idiopathic thrombocytopenic purpura.

23.   On October 5, 2012, Lieutenant General David H. Huntoon, Jr., the Superintendent, USMA, determined that the 35 demerit punishment resulting from the Brigade Board dated August 28, 2012, violated the terms of Mr. Ray's suspended separation from the USMA, and the Superintendent vacated the suspension.   The Superintendent recommended to the Assistant Secretary of the Army, Manpower and Reserve Affairs, that Mr. Ray be separated from the USMA and discharged from the Army with the issuance of a General (Under Honorable Conditions) discharge certificate pursuant to AR 612-205, Table 3, Rule 9, which references the applicability of AR 635-200 with respect to the determination that Mr. Ray was neither to be transferred to the Army Reserve nor ordered to active duty as an enlisted soldier in the grade of E-4.   The Superintendent also recommended that the Assistant Secretary of the Army, Manpower and Reserve Affairs direct that an AR 15-6 investigation be conducted to determine if Mr. Ray breached his USMA service agreement and whether he should be required to reimburse his USMA educational expense.

24.   By memorandum dated October 16, 2012, Mr. Ray was given an opportunity to submit any matters he wished to be considered by Headquarters, Department of the Army in making a final decision on the Superintendent's recommendations.

25.   Mr. Ray's medical treatment records dated October 22, 2012, reflect notes by Dr. Joshua Hain in the Psychiatric Clinic at the Keller Army Community Hospital at West Point, New York, reflecting Mr. Ray's diagnosis as depression, alcohol dependence, and idiopathic thrombocytopenic purpura.

26.   By Memorandum dated November 1, 2012, Mr. Ray outlined the mitigating circumstances related to his actions on April 24, 2012, that led to the Superintendent's recommendation that he be separated from the USMA.   Mr. Ray explained that at the time of the incident, he was suffering from both behavioral health issues and idiopathic thrombocytopenic purpura and was preparing for a medical leave of absence related to those diseases.   As a result, Mr. Ray was receiving daily 200 mg of the steroid prednisone, as well as 450 mg of the anti-depressant Wellbutrin and 75 mg of the anti-psychotic drug Seroquel.   Mr. Ray pointed out the well-known side effects of these medicines and offered those side effects as a plausible explanation for his uncharacteristic outburst with the officer-in-charge.   In addition, Mr. Ray attached numerous character statements attesting to the fact that his outburst with the captain was an anomaly.

27.   Mr. Ray's medical treatment records dated November 1, 2012, reflect that Mr. Ray was examined by Dr. Richard Acevedo for a military services physical separation.   Dr. Acevedo diagnosed as follows:  "CDT [cadet] has a Idiopathic Thrombocytopenia Purpura and should F/U [follow up] with Hematologist as needed.   Also has PMH [past medical history] of ETOH [alcohol] Dependence and Depression and should F/U with ASAP [Army Substance Abuse Program] and CPD as needed."

28.   Mr. Ray's medical treatment records dated November 5, 2012, reflect a note dated November 6, 2012, by Dr. Rainey at Brooke Army Medical Center:  "22 yo cadet with chronic idiopathic thrombocytopenic purpura treated with prednisone over the summer.   Platelets have improved to a level that does not require therapy at this time, but have not normalized.   Antipate [sic] the need for ongoing surveillance as well as possible therapy in the future.   I would advise patient refrain from contact sports or high risk activities.   Additionally would recommend

8

referral for MEB [Medical Evaluation Board] given chronic ITP [idiopathic thrombocytopenic purpura] IAW [in accordance with] AR 40-501 [paragraph] 2-4."

29.  By memorandum dated February 13, 2013, the Assistant Secretary of the Army, Manpower and Reserve Affairs approved the Superintendent's recommendation to separate Mr. Ray from the USMA and to discharge him from the U.S. Army with a General (Under Honorable Conditions) discharge certificate.  The Assistant Secretary further directed the Superintendent, USMA to conduct a recoupment investigation under the provisions of AR 15-6 and to forward the findings of the investigation with the Superintendent's recommendation to Headquarters, Department of the Army, G-1.

30.  Mr. Ray was separated from the U.S. Army effective February 13, 2013, with a General (Under Honorable Conditions) discharge certificate.

31.  On Department of the Army ("DA") Form 1574, Report of Proceedings by Investigating Officer/Board of Officers, dated April 8, 2013, Lieutenant Colonel Tania M. Chacho issued findings and recommendations pursuant to an investigation she conducted in accordance with AR 15-6, as directed by the Assistant Secretary of the Army, Manpower and Reserve Affairs.  Lieutenant Colonel Chacho, the investigating officer, found that Mr. Ray signed a valid service agreement on June 30, 2008, putting him on notice that if he breached the agreement, he might be required to reimburse the government for the cost of the education provided to him, which was calculated to be $164,953, and that Mr. Ray failed to fulfill his active duty obligation.  In addition, Lieutenant Colonel Chacho found as follows:

> Cadet Ray was separated for disciplinary violations … This separation action was a result of the cadet's misconduct, but occurred during treatment for an ongoing medical condition …According to medical authorities, Cadet Ray would have required a medical waiver for commissioning, although neither the process to obtain a waiver, nor a referral to a Medical Evaluation Board (MEB) was initiated.  Cadet Ray's medical condition did not justify nor excuse his episode of

misconduct.  However, the combination of medications and recent timing of his hospitalization may have contributed to its occurrence … I have reviewed Cadet Ray's medical record and find that a formal, ultimate decision on his medical condition never occurred despite numerous comments in the record documenting the need for a waiver, leaving in doubt Cadet Ray's physical ability to receive a commission … ALARACT 159/2012 states that when Soldiers are undergoing administrative separation for misconduct, the General Court-Martial Convening Authority (GCMCA) must direct, in writing, whether to proceed with a Disability Evaluation System (DES) or administrative separation.  The GCMCA's written directive must address whether the Soldier's medical condition is the direct or substantial contributing cause of the conduct that led to the recommendation for administrative separation, and/or whether other circumstances of the individual case warrant disability processing instead of further processing for administrative separation.

32.  Lieutenant Colonel Chacho recommended on the DA Form 1574 that recoupment of

Cadet Ray's USMA education benefit was not appropriate:

Cadet Ray was on notice, failed to fulfill his AD obligation, was separated for misconduct, and the educational amount is rationally based, but recoupment is not appropriate.  His underlying medical condition is a significant factor in this case for two reasons:  1) Treatment of the condition may have significantly contributed to his misconduct; and 2) The condition necessitates either a waiver to meet commissioning standards or initiation of an MEB … In light of this uncertainty regarding his physical ability to obtain a commission, which would result in Cadet Ray failing to fulfill his active duty obligation due to a medical condition, recommend that the recoupment case against him cease and he not be held financially liable for $164,953 cost of his education at the United States Military Academy.  Because Cadet Ray's medical condition and treatment were so inextricably linked to the timing (and potentially contributed to) his misconduct, pursuing recoupment would be in contravention of DoD policy.  The requirement that the GCMCA direct whether to proceed with the DES or administrative action was an essential step that was missed and is necessary before any recoupment action is initiated IAW ALARACT 159/2012.

33.  By letter to Mr. Ray dated April 13, 2013, Lieutenant Colonel Chacho advised Mr.

Ray of her findings and recommendations, stating:

On 8 April 2013, I completed my informal investigation into the recoupment of educational expenses related to your separation from the United States Military Academy.  My findings indicate that you signed a valid service agreement, failed to fulfill your active duty obligation, were separated for disciplinary violations, and that the Directorate of Resource Management correctly calculated your educational cost.

My investigation further revealed that some medical authorities indicated that you would require a medical waiver for commissioning.  While your medical condition did not justify nor excuse your episode of misconduct, the combination of medications and recent timing of your hospitalization may have contributed to its occurrence.  After reviewing your medical record, I find that a formal, ultimate decision on your medical condition never occurred, leaving in doubt your physical ability to meet commissioning standards.

In light of this uncertainty regarding your physical ability to obtain a commission, which would result in your failure to fulfill your active duty obligation due to a medical condition, I recommend that the recoupment case against you cease and you not be held financially liable for the $164,953 cost of your education at the United States Military Academy.

34.  By Memorandum dated October 2, 2013, Lieutenant General Howard B. Bromberg, Deputy Chief of Staff, G-1, stated:  "Pursuant to Title 10, United States Code, Section 2005, I have carefully considered the AR 15-6 findings.  I find the debt to be valid and direct Mr. Ray be ordered to repay educational benefits in the amount of $164,953.00 with interest if applicable." There is no record evidence that Lieutenant General Bromberg considered any information other than Lieutenant Colonel Chacho's AR 15-6 findings nor that he provided any additional rationale or explanation for his action.

35.  By letter dated April 30, 2014, Mr. Ray was notified by the Defense Finance and Accounting Service that he owed a debt to the United States in the amount of $164,953.

36.  To liquidate his purported debt based on the wrongful recoupment of his USMA educational benefit, Mr. Ray has paid the Defense Finance and Accounting Service approximately $2,450 during the period from July 22, 2014 to the present.  Mr. Ray agreed with DFAS to continue to make monthly payments of $150 per month to be credited against his purported debt until such time as the debt is extinguished or is otherwise declared void.

37.  In a Rating Decision dated June 3, 2014, the Department of Veterans Affairs Houston Regional Office determined that Mr. Ray had two service-connected medical

conditions:  (1) diffuse large B-cell lymphoma, assigned a disability rating of 100%, effective February 24, 2014; and (2) idiopathic thrombocytopenic purpura, assigned a disability rating of 70% effective February 14, 2013, and a disability rating of 30% from July 1, 2013.

38.  On September 12, 2014, Mr. Ray submitted an application to the ABCMR requesting that his military records be corrected due to the Army's failure to follow its own regulations in connection with his separation from the USMA, his discharge from the Army, and the recoupment of his USMA education expense.  Mr. Ray requested that the ABCMR correct his military records as follows:  (1) vacate his administrative separation from the USMA and his discharge from the Army for misconduct and the issuance to him of a General (Under Honorable Conditions) discharge certificate; (2) vacate the determination by the Army and the Defense Finance and Accounting Service that Mr. Ray is indebted to the United States for his USMA educational benefit in any amount and order that any payments made by Mr. Ray related to that debt be repaid to him; (3) order that Mr. Ray be retired from the U.S. Army with a physical disability with the issuance of an Honorable Discharge certificate; (4) order that Mr. Ray be placed on the Temporary Disability Retired List with a combined disability rating of 100 percent, effective February 13, 2013, to be examined and adjudicated consistent with Department of Defense and Army regulations; (5) order that the Defense Finance and Accounting Service pay to Mr. Ray any and all pay and allowances due and owing to him retroactive from February 13, 2013, and prospectively from the date of the Board's order; and (6) order any other relief the Board determines is warranted in Mr. Ray's case.

39.  In a Record of Proceedings dated January 21, 2016, the ABCMR denied Mr. Ray's application.  The ABCMR set forth the reasons for its decision in the Discussions and

Conclusions section of the Record of Proceedings, concluding that relief was not warranted because the Army's disposition of Mr. Ray's case purportedly involved no error or injustice.

Claims for Relief

Count I

(Violation of the Administrative Procedure Act – 5 U.S.C. §§ 701 *et seq.*)

40.   The allegations in the preceding paragraphs are re-alleged as if fully set forth below.

41.   The Army administratively separated Mr. Ray from the USMA and discharged him from the Army for misconduct in violation of Army regulations that required his separation for medical reasons and his placement on the Temporary Disability Retired List as a result of three disqualifying medical conditions with which he was diagnosed.  The Army's failure to follow its own regulations resulted in the Army erroneously determining that Mr. Ray breached his USMA service agreement and was indebted to the United States in the amount of $164,953, despite an Army investigative officer's findings and recommendations that recoupment of the USMA education cost was not warranted in light of the Army's regulatory violations.  The Army's actions violated the Administrative Procedure Act, which requires that this Court must set aside the Army's action as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

A.   Applicable Department of Defense and Army Regulatory Provisions

42.   AR 210-26 provides policy and procedures for the general governance and operation of the USMA.  AR 210-26, paragraph 4-6. (Disposition of medically disqualified cadets) states that a USMA cadet must meet the medical accession standards of AR 40-501, chapter 2, for retention at the USMA and for appointment and commissioning as a U.S. Army officer upon graduation.  The Superintendent, USMA, may grant a medical waiver to allow a cadet to

continue at the USMA, provided the cadet meets the retention standards for officers and enlisted

members of the Army outlined in AR 40-501, chapter 3.

43.   AR 210-26, paragraph 6-30.a. (Medically disqualified cadets) provides in pertinent

part that when it is determined that a USMA cadet does not meet the medical fitness standards

for appointment on active duty at the expected time of commissioning, the Superintendent will

review the case and take one of the following actions:  (1) afford the cadet the opportunity to

resign; (2) recommend that, in the case of the medical disqualification under cadet retention

standards as provided in AR 40-501, the cadet be separated (see AR 612-205); (3) recommend

that the cadet, if physically disqualified for any military service, be discharged; (4) permit the

cadet, upon the cadet's written request to complete the academic year and allow further

observation if it appears the disqualifying defect is clearly remediable; or (5) grant leave without

pay to the cadet upon the cadet's written request or direct leave from USMA for an appropriate

period of time not to exceed one year.  At a time designated by the Surgeon, USMA, the cadet

will be re-examined to determine if the medical disqualification has been remedied.  If so, and

otherwise qualified, the cadet will be permitted to return to the USMA.  In the event that the

medical disqualification continues to exist, the case will be re-evaluated consistent with AR 210-

26.

44.   AR 210-26, paragraph 7-1.b.(3)(b) states that a cadet who resigns or is separated and

who is, for reasons of unsuitability, unfitness, or physical disqualification, not suited for enlisted

service will be discharged.  Paragraph 7-9.a. (Breach of service agreement and reimbursement of

educational costs) states that a cadet who is separated from the USMA under procedures

contained in Table 7-1, will be deemed to have breached his or her service agreement.  Table 7-1

includes a separation for conduct deficiency or misconduct as a separation deemed to be a breach

of the cadet's service contract.  Table 7-1 does not deem separation due to a disqualifying medical condition or physical disability to be a breach of a cadet's service contract.

45.  AR 612-205 contains procedures for appointment and separation of USMA cadets. Paragraph 7 provides for separation of cadets from the USMA.  Paragraph 7.b.(1) states that when separating a cadet for physical disability who entered the USMA from civilian status, the Superintendent will convene a medical board to determine if the cadet is physically qualified for retention at the USMA.  Nonqualified cadets will be separated from the USMA and discharged from the Army.

46. AR 612-205, Table 3, Rule 9, states that the separation of a cadet because of unsuitability will be made in accordance with AR 635-200, Active Duty Enlisted Administrative Separations.  AR 635-200 is applicable because a determination of separation due to unsuitability is based on a determination that under the standards of AR 635-200 applicable to enlisted soldiers, the cadet should not be transferred to the Army Reserve or ordered to active duty as an enlisted soldier in the grade of E-4 consistent with the cadet's service obligation.

47.  AR 40-501, Standards of Medical Fitness, in chapter 2 governs medical fitness standards for officer procurement programs, including USMA cadets and in chapter 3, establishes the medical fitness standards for officers and enlisted soldiers for retention and separation.

48.  AR 40-501, paragraph 2-2.c.(6) states the standards in chapter 2 apply to retention of USMA cadets.  Paragraph 2-2.e. states that disqualifying medical conditions are listed in paragraphs 2-3 through 2-32 and that those conditions are disqualifying by virtue of current diagnosis, or for which the candidate has a verified past medical history.  Paragraph 2-4.b. lists idiopathic thrombocytopenia as a hemorrhagic disorder among blood and blood-forming diseases

that causes a cadet to not meet medical retention standards.  Paragraph 2-27.d. states: "Current mood disorders including, but not limited to … depressive not otherwise specified … do not meet the standard.  Paragraph 2-27.d.(1) further explains that a "[h]istory of mood disorders requiring outpatient care for longer than 6 months by a physician or other mental health professional … or inpatient treatment in a hospital or residential facility does not meet the standard.  Paragraph 2-27.o. states:  "Current or history of alcohol dependence … alcohol abuse … does not meet the standard."

49.  AR 40-501, chapter 3 discusses medical fitness standards for retention and separation of soldiers, including retirement.  Paragraph 3-3. states that a soldier with conditions listed in chapter 3 who does not meet the required physical standards will be evaluated by a Medical Evaluation Board ("MEB").  Paragraph 3-3.b. states that a soldier pending separation in accordance with provisions of AR 635-200 authorizing separation under other than honorable conditions who does not meet medical retention standards will be referred to a MEB and the physical disability processing and administrative separation processing will be conducted in accordance with AR 635-200 and AR 635-40.

50.  AR 40-501, paragraph 3-3. states that a soldier with conditions listed in chapter 3 who does not meet the required medical standards will be evaluated by a MEB and will be referred to a Physical Evaluation Board.  Paragraph 3-3.d. states that a physician who identifies a soldier with medical conditions listed in chapter 3 should initiate a MEB at the time of identification.

51.  AR 40-501, paragraph 3-7.e. (Blood and blood-forming tissue diseases) states that among the causes for referral of a soldier to a MEB are purpura and other bleeding diseases,

when response to therapy is unsatisfactory, or when therapy is such as to require prolonged, intensive medical supervision.

52.   AR 635-40, Physical Evaluation for Retention, Retirement, or Separation, establishes the Army Physical Disability Evaluation System ("APDES") according to the provisions of 10 U.S.C. chapter 61 (including 10 U.S.C. § 1217, which makes the APDES applicable to USMA cadets) and sets forth policies, responsibilities, and procedures that apply in determining whether a soldier due to physical disability is unfit to reasonably perform the duties of his or her office, grade, rank, or rating.  If a soldier is found unfit because of physical disability, AR 635-40 provides for disposition of the soldier according to applicable laws and regulations.

53.   AR 635-40, paragraph 4-3. provides that when a soldier is pending an administrative separation which authorizes a characterization of service of under other than honorable conditions, the general court-martial convening authority may abate the administrative separation and order that the soldier's case be processed by the APDES if he or she finds that the soldier's disability is the cause or a substantial contributing cause of the misconduct that might result in a discharge under other than honorable conditions or other circumstances warrant disability processing instead of alternate administrative separation.

54.   AR 635-40, paragraph 5-5.b. provides that a Soldier being separated due to a physical disability will be issued a DD Form 256A (Honorable Discharge Certificate).

55.   AR 635-200 sets forth the basic authority for the separation of enlisted personnel. Chapter 14 establishes policy and procedures for separating personnel for misconduct. Paragraph 1-33.a. states that disposition through medical channels takes precedence over administrative separation processing.  Paragraph 1-33.b. states that when a medical treatment facility or attending medical officer determines that a soldier being processed for an administrative

separation under Chapter 14 does not meet medical fitness standards for retention under AR 40-501, he or she will refer the soldier to an MEB. The administrative separation proceedings will continue, but final action by the separation authority will not be taken, pending the results of the MEB. If the MEB findings indicate that referral of the case to a physical evaluation board ("PEB") is warranted for disability processing, the MEB proceedings will be provided to the general court-martial convening authority who may direct that the soldier be processed through the physical disability system if either of the following has been determined: (a) the soldier's medical condition is the direct or substantial contributing cause of the conduct that led to the recommendation for administrative elimination; or (b) other circumstances of the individual case warrant disability processing instead of further processing for administrative separation. The general court-martial convening authority may not delegate authority to make this determination.

56. ALARACT Message 159/2012, dated 13 June 2012, clarified enlisted administrative processing under AR 635-200 for soldiers identified as not meeting medical retention standards. Paragraph 4.A. states except for separation in lieu of a court-martial, final disposition through the APDES takes precedence over administrative separation processing regardless of when the medical determination is made (either before, during, or after initiation of administrative separation). Paragraph 4.B. states that the medical treatment facility commander or attending medical officer will refer soldiers to an MEB who do not meet medical fitness standards for retention. Paragraph 4.B.(1) states that when either the military treatment facility commander or attending medical officer determined a soldier does not meet retention standards, the separation authority will not take final action on the administrative separation board until a final medical retention determination is made. Paragraph 4.B.(2) states that when the MEB determines referral to a PEB is warranted soldiers will be referred to a PEB unless the soldier is processing for

administrative separation for fraudulent entry or misconduct.  When soldiers are undergoing administrative separation for fraudulent entry or misconduct, the general court-martial convening authority must direct, in writing, whether to proceed with the APDES process or administrative separation.  The general court-martial convening authority's written directive must address whether the soldier's medical condition is the direct or substantial contributing cause of the conduct that led to the recommendation for administrative separation and/or whether other circumstances of the individual case warrant disability processing instead of further processing for administrative separation.

57.  Department of Defense Instruction ("DoDI") 1332.38, Physical Disability Evaluation, implements the disability retirement provisions in 10 U.S.C. chapter 61, and provides the physical disability evaluation system policies and procedures to be followed by the military departments, including the Army.  DoDI 1332.38, paragraph E3.P4.1. provides that a service member with an unfitting physical disability shall be retired or separated from the military with disability benefits when the physical disability was either incurred or aggravated while the service member was serving in the armed forces.  DoDI 1332.38, paragraph E2.1.32 defines the term "service aggravation" as "[t]he permanent worsening of a pre-Service medical condition over and above the natural progression of the condition caused by trauma or the nature of Military Service."

58.  DoDI 1332.38, paragraph E3.P4.5.2.2.1 (as revised by DoD Policy Memorandum on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub L. 110-181), dated October 14, 2008 ("DoD Policy Memorandum")), provides that there is a presumption that a service member entered active duty in a sound condition with no impairment existing prior to service, when a disability was not noted at the time of the service

member's entrance on active duty.  Paragraph E3.P4.5.2.2.1 further states:  "This presumption is overcome if clear and unmistakable evidence demonstrates that the disability existed before the Service member's entrance on active duty and was not aggravated by military service.  Absent such clear and unmistakable evidence, the PEB will conclude that the disability was incurred or aggravated during military service."

59.  DoDI 1332.38, paragraph E3.P4.5.2.2.2. (as revised by the DoD Policy Memorandum) requires that any hereditary or genetic disease shall be evaluated to determine whether clear and unmistakable evidence demonstrates that the disability existed before the service member's entrance on active duty and was not aggravated by military service.  However, even if the conclusion is that the disability was incurred prior to entry on active duty, any aggravation of that disease, incurred while the member is entitled to basic pay, beyond that determined to be due to natural progression shall be determined to be service aggravated. To overcome the presumption of sound condition, factual evidence based upon well-established medical principles as distinguished from personal medical opinion alone must be presented to rebut the presumption.

B.   The Army Failed to Comply with AR 210-26 and AR 612-205 when Separating Mr.
     Ray from the USMA and the ABCMR Erroneously Did Not Address or Respond to
     Mr. Ray's Non-Frivolous Argument in that Regard Made in His Application

60.  Between March 2012 and February 2013, military health care providers repeatedly diagnosed Mr. Ray with three disqualifying medical conditions:  (a) idiopathic thrombocytopenic purpura; (b) depression or depressive disorder not otherwise specified; and (c) alcohol dependence or alcoholism.  Pursuant to AR 210-26, paragraph 4-6., Mr. Ray's diagnosis with these conditions caused him to be a medically disqualified cadet, because he did not meet the medical accession standards of AR 40-501, chapter 2, for retention at the USMA and for

20

appointment as an officer upon graduation.  AR 40-501, paragraph 2-2.c.(6) states that

disqualifying medical conditions for a cadet are listed in paragraphs 2-3 through 2-32, which

include:  (a) idiopathic thrombocytopenic purpura (paragraph 2-4.b.); (b) depressive mood

disorders not otherwise specified (paragraph 2-27.d.); and (c) a current or history of alcohol

dependence or alcohol abuse (paragraph 2-27.o.).

61.  In or about August 2012, when Mr. Ray returned to the USMA from the medical

leave of absence granted so that he could receive treatment for his three disqualifying medical

conditions, military health care providers continued to diagnose him with the same disqualifying

medical conditions.  Accordingly, AR 210-26, paragraph 6-30.a. expressly required that the

USMA take one of four alternative courses of action:  (1) allow Mr. Ray to resign; (2)

recommend Mr. Ray's separation due to a medical disqualification in accordance with AR 612-

205 and discharge Mr. Ray from military service as physically disqualified; (3) permit Mr. Ray

upon his written request to complete the academic year and allow further observation if it

appeared the disqualifying defect was clearly remediable; or (4) place Mr. Ray on leave without

pay or a medical leave of absence for up to one year, with a subsequent re-examination to

determine if his medical disqualification had been remedied.  If the USMA determined that Mr.

Ray's separation was required, AR 612-205, paragraph 7.b.(1) required that the Superintendent,

USMA convene a medical board to determine if Mr. Ray was physically qualified for retention at

the USMA.  The USMA failed to comply with AR 210-26, when it took none of these required

alternatives and it failed to comply with AR 612-205 by not convening a medical board to

evaluate Mr. Ray.  The USMA improperly separated Mr. Ray administratively for misconduct

without regard to his disqualifying medical conditions and without regard to the regulatory

requirements that his medical conditions be formally re-examined or that he be referred to a

medical board to determine whether he met the USMA retention standards of AR 40-501.

62.  In his application to the ABCMR, Mr. Ray argued that the Army's failure to comply

with AR 210-26 and AR 612-205 was error warranting full relief.  In the Record of Proceedings

denying Mr. Ray's application, the ABCMR failed to address or respond to this non-frivolous

argument.  Both the Army's failure to comply with AR 210-26 and AR 612-205 in Mr. Ray's

case and the ABCMR's complete failure to address or respond to Mr.  Ray's non-frivolous

argument in that regard set forth in his application were final agency actions that were arbitrary,

capricious, contrary to law, an abuse of discretion, and unsupported by substantial evidence.

C.  The Army Failed to Comply with AR 635-200 and ALARACT Message 159/2012
by Administratively Separating Mr. Ray for Misconduct Absent a Written
Determination whether his Medical Separation Pursuant to the APDES was
Warranted and the ABCMR Erroneously Concluded that the Army's Actions were
not Error.

63.  On October 5, 2012, the Superintendent, USMA, recommended to the Assistant

Secretary of the Army, Manpower and Reserve Affairs, that Mr. Ray be separated from USMA

and discharged from the Army for misconduct pursuant to AR 612-205, Table 3, Rule 9, which

provides that a determination for unsuitability for service as an enlisted soldier must be made in

accordance with AR 635-200.  AR 635-200, paragraph 1-33.a and ALARACT Message

159/2012, paragraph 4.A., state that disposition through medical channels takes precedence over

administrative separation proceedings.  In light of Mr. Ray's three disqualifying medical

conditions, AR 635-200, paragraph 1-33.b., AR 635-40, paragraph 4-3., and ALARACT

Message 159/2012, paragraph 4.B. required that Mr. Ray be referred to a MEB and that final

action on his administrative separation should not have been taken pending receipt of the MEB

results.  Those provisions further required that the Superintendent, USMA, as Mr. Ray's general

court-martial convening authority, make a written determination whether Mr. Ray should be processed through the Army Physical Disability Evaluation System ("APDES") if his medical condition was the direct or substantial contributing cause of the conduct that led to his administrative separation or other circumstances warranted disability processing in lieu of administrative separation.  The Army failed to comply with AR 635-200, AR 635-40, and ALARACT Message 159/2012 by failing to refer Mr. Ray to a MEB and by the failure of the Superintendent to make the required written determination regarding Mr. Ray's medical condition prior to recommending Mr. Ray's administrative separation from USMA and discharge from the Army for misconduct.

64.  Mr. Ray argued in his application to the ABCMR that the Army's failure to comply with AR 635-200, AR 635-40, and ALARACT Message 159/2012 was error warranting full relief.  In the Record of Proceeding denying Mr. Ray's application, the ABCMR erroneously concluded that the Army was not required to refer Mr. Ray to a MEB or the APDES, because there purportedly was insufficient evidence to show that Mr. Ray's medical condition did not meet retention standards under AR 40-501, chapter 3.  Consequently, in the ABCMR's incorrect view, in the absence of a pending medical disposition there was no requirement for the Superintendent, USMA to assess Mr. Ray's medical condition prior to proceeding with an administrative separation for misconduct.

65.  The ABCMR claimed that there was insufficient evidence to show that Mr. Ray's medical conditions prevented him from performing his duties as a cadet, such that his chain of command was not obligated to refer him to a MEB.  The ABCMR pointed specifically to the lack of a permanent physical profile for his conditions, which the ABCMR asserted was a condition precedent for Mr. Ray's referral to a MEB or the APDES.  The ABCMR's conclusion

is erroneous for four reasons.  First, it disregards the fact that AR 210-26, paragraph 6-30. characterizes a cadet as medically disqualified if either the cadet cannot perform his or her duties as a member of the Corps of Cadets or if the cadet will not meet the medical fitness standards for appointment on active duty at the expected time of commissioning.  The record evidence is undisputed that Mr. Ray did not meet medical fitness standards for commissioning due to his diagnosis with three disqualifying medical conditions.  Military health care providers on August 10, 2012, and September 17, 2012, noted in Mr. Ray's health care records that his disqualifying medical conditions did not meet medical standards for commissioning, because they required a waiver of the retention standards under AR 40-501, to allow him to be appointed as a commissioned officer upon graduation.  Similarly, Lieutenant Colonel Chacho in her AR 15-6 report of investigation found that Mr. Ray's medical treatment records reflected that he did not meet the medical standards required for his commissioning as an officer upon graduation. Second, AR 210-26 and AR 612-205 directed referral of Mr. Ray to a medical board or the making of a formal medical determination to ascertain whether Mr. Ray's three disqualifying medical conditions had been remedied.  AR 210-26, paragraphs 4-6. and 6-30., required upon his return from his medical leave of absence that Mr. Ray be formally re-examined to determine if he met retention standards.  AR 612-205, paragraph 7.b.(1) required that if Mr. Ray were to be separated from the USMA, he was to be referred to a medical board to determine if he was physically qualified for retention at the USMA.  Lieutenant Colonel Chacho's report of investigation also found that the USMA failed to comply with Army regulations by making a final determination regarding Mr. Ray's medical condition upon his return from his medical leave of absence in August 2012.  Third, the ABCMR cites to no nor is there any regulatory authority that makes the existence of a permanent physical profile a prerequisite for a soldier's

referral to a MEB. Fourth, the ABCMR conclusion ignores the record evidence in Mr. Ray's military medical treatment records dated November 6, 2012, that a military doctor at Brooke Army Medical Center did, in fact, recommend Mr. Ray's referral to a MEB in accordance with AR 40-501 due to Mr. Ray's "chronic" idiopathic thrombocytopenic purpura. AR 40-501, paragraph 3-3.d., states that a physician who identifies a soldier with a medical condition listed in chapter 3 should initiate a MEB at the time of identification. Idiopathic thrombocytopenic purpura is a medical condition identified in AR 40-501, chapter 3 at paragraph 3-7.e., as one not meeting retention standards and warranting a soldier's referral to a MEB. The Army failed to initiate a MEB in clear violation of AR 40-501, paragraph 3-3d. and the ABCMR offered no rationale to the contrary.

66. The ABCMR concluded that no referral of Mr. Ray to the APDES was required because his "ITP [idiopathic thrombocytopenic purpura] was neither incurred in service nor aggravated by service." The ABCMR appears to suggest that idiopathic thrombocytopenic purpura is a genetic condition that pre-existed Mr. Ray's entry to the USMA and as such is not a compensable disability under the APDES even if aggravated by service. The ABCMR conclusion is legally and factually flawed. First, other than a vague reference to the National Institutes of Health, the ABCMR cites to no medical or scientific authority characterizing idiopathic thrombocytopenic purpura as a genetic or hereditary condition and, in fact, concedes that "the cause of ITP is presumed to be genetic but it is not scientifically known." Second, the ABCMR conclusion is directly contrary to the presumptions of soundness and of service aggravation established in DoDI 1332.38, as amended. DoDI 1332.38, paragraph E3.P4.5.2.2.1 provides that there is a presumption that a service member entered active duty in a sound condition with no impairment existing prior to service, when a disability was not noted at the

time of the service member's entrance on active duty.  Paragraph E3.P4.5.2.2.1 further states:
"This presumption is overcome if clear and unmistakable evidence demonstrates that the
disability existed before the Service member's entrance on active duty and was not aggravated
by military service."  In addition, DoDI 1332.38, paragraph E3.P4.5.2.2.2. requires that any
hereditary or genetic disease shall be evaluated to determine whether clear and unmistakable
evidence demonstrates that the disability existed before the service member's entrance on active
duty and was not aggravated by military service. To overcome the presumption of sound
condition, factual evidence based upon well-established medical principles as distinguished from
personal medical opinion alone must be presented to rebut the presumption.  The ABCMR offers
or points to no evidence in Mr. Ray's case, let alone clear and unmistakable evidence, to rebut
the regulatory presumptions of soundness and service aggravation to support its conclusion that
Mr. Ray's idiopathic thrombocytopenic purpura was not a compensable disability.

    67.  The ABCMR concluded that no referral of Mr. Ray to the APDES was required
because his "depressive mood was an acute condition that was managed by rest, medications,
and counseling.  It was neither disabling nor unfitting."  The ABCMR's conclusion is erroneous
for two reasons.  First, the ABCMR offers no medical or psychiatric evidence to support its
medical conclusions that Mr. Ray's depression was not unfitting.  Second, it is undisputed that
Mr. Ray's depression was one of three disqualifying medical conditions with which he had been
diagnosed by military health care providers and that required his referral to a MEB for a decision
by Army physicians whether his condition did not meet the retention standards of AR 40-501.  It
was error for the ABCMR to conclude that no referral to a MEB was required and then to
substitute its own medical conclusions without support in the record regarding the nature and

severity of Mr. Ray's medical condition in the absence of a MEB or other expert medical evidence.

    D.  Based on Mr. Ray's Improper Separation and Discharge for Misconduct, the Army Erroneously Determined that Mr. Ray's USMA Educational Benefit Should be Recouped

68.  On February 13, 2013, the Assistant Secretary of the Army, Manpower and Reserve Affairs directed the Superintendent, USMA to conduct a recoupment investigation under AR 15-6 and to forward the investigation's findings to the Assistant Chief of Staff, G-1.  Lieutenant Colonel Chacho conducted the investigation and reported her findings and recommendations on a DA Form 1574, Report of Proceedings by Investigating Officer/Board of Officers, dated April 8, 2013.  Lieutenant Colonel Chacho found that Mr. Ray had signed a valid service agreement on June 30, 2008, which put him on notice that he might be required to reimburse the government for the cost of his USMA education, calculated to be $164,953, if he failed to fulfill his active duty obligation.   However, Lieutenant Colonel Chacho found that at the time of the conduct at issue and his administrative separation, Mr. Ray suffered from medical conditions that may have contributed to the misconduct and that no "formal, ultimate decision" on his medical condition occurred "despite numerous comments in the record documenting the need for a [commissioning] waiver, leaving in doubt Cadet Ray's physical ability to receive a commission." Lieutenant Colonel Chacho found that the Army had not followed the procedures required by Army regulations in processing Mr. Ray's administrative separation, because the Superintendent never made the required determination whether Mr. Ray should be separated for a physical disability in lieu of an administrative separation for misconduct.  Lieutenant Colonel Chacho recommended on the DA Form 1574 that recoupment by the government of Cadet Ray's USMA educational cost of $164,953 was not appropriate.

69.   Despite the findings and recommendations in the AR 15-6 report of investigation, by memorandum dated October 2, 2013, Lieutenant General Howard B. Bromberg, the Army Deputy Chief of Staff, G-1, stated cursorily:  "Pursuant to Title 10, United States Code, Section 2005, I have carefully considered the AR 15-6 findings.  I find the debt to be valid and direct Mr. Ray be ordered to repay educational benefits in the amount of $164,953.00 with interest if applicable."

70.   In his application to the ABCMR, Mr. Ray argued that the USMA failed:  (a) to properly address his disqualifying medical conditions upon his return to USMA from his medical leave of absence in August 2012, either by formally evaluating them or separating him for physical disability; and (b) to address those medical conditions in the context of the Superintendent's recommendation that Mr. Ray be separated for misconduct without first determining in writing whether Mr. Ray should be separated under APDES.  Had the USMA complied with these applicable regulatory requirements, Mr. Ray would have been separated and discharged with an Honorable discharge certificate due to a medical condition or physical disability pursuant to AR 210-26, paragraph 6-30.a.(2) and (4) and AR 612-205, paragraph 7.b.(1), which state that when separating a cadet for physical disability who entered USMA from civilian status, the Superintendent will convene a medical board to determine if the cadet is physically disqualified for retention at the USMA.  Mr. Ray further argued that pursuant to AR 210-26, paragraph 7-9.a. and Table 7-1, his separation due to a medical condition or a physical disability would not be a breach of his USMA service agreement and he would not be liable for the recoupment by the government of any USMA educational cost or benefit.  Paragraph 7-9.a. (Breach of service agreement and reimbursement of educational costs) states that a cadet who is separated from the USMA under procedures contained in Table 7-1, will be deemed to have

breached his or her service agreement.  Although Table 7-1 includes separations for conduct deficiency or misconduct as separations deemed to be a breach of a cadet's service contract, Table 7-1 does not deem a separation due to a medical condition or physical disability to be a breach of the USMA service agreement.  This is the finding and recommendation made by Lieutenant Colonel Chacho in her AR 15-6 investigative report:  the Army's failure to follow its own regulations resulted in uncertainty regarding Cadet Ray's physical ability to obtain a commission, which would have resulted in his failure to fulfill his active duty obligation due to a medical condition and an absence of his liability for the $164,953 cost of his education at the USMA.

71.  Had the Army properly followed its own regulations and separated Mr. Ray from the USMA and discharged him from the Army for medical reasons, AR 635-40, paragraph 5-5.b. required that he be issued a DD Form 256A (Honorable Discharge Certificate).

72.  Mr. Ray further argued in his application to the ABCMR, and alleges before this Court, that Lieutenant General Bromberg's conclusory decision that Mr. Ray was indebted to the United States for the cost of his USMA education in the amount of $164,953 was error warranting his full relief.  Lieutenant General Bromberg's decision fails to demonstrate that he examined the relevant facts or that he articulated a satisfactory explanation for his action including a rational connection between the facts found and the choice made.  Lieutenant General Bromberg's decision was not one of reasoning, because it was merely a conclusion that articulated no satisfactory explanation for his action, which constitutes arbitrary and capricious agency action.  Lieutenant General Bromberg provided no rationale or reasoning for his decision to reject the findings and recommendations in Lieutenant Colonel Chacho's investigative report and cites to no other evidence in the record to support the decision he did make.  Consequently,

he failed to meet the minimal requirement of providing a rational connection between the facts found in the AR 15-6 investigative report or any other facts in the record (all of which supported a decision not to recoup Mr. Ray's USMA educational cost) and his decision that the educational cost should be recouped.  Lieutenant General Bromberg's two-sentence explanation for his decision omitted the critical step of connecting the facts to the conclusion.  It may be that Lieutenant General Bromberg had some reason for reaching the conclusion that he did, but the boilerplate language he used makes it impossible to discern his rationale and thus constitutes unreasoned and arbitrary and capricious decision making.

73.   In the Record of Proceedings denying Mr. Ray's application, the ABCMR determined Lieutenant General Bromberg's decision was appropriate, stating:  "The DCS [Deputy Chief of Staff] G-1 decision was neither capricious nor arbitrary.  The debt was established as a valid debt and the DCS G-1 simply executed what the law and regulation stipulate and what the applicant himself agreed to."  Although the ABCMR acknowledged that the AR 15-6 investigating officer had recommended that Mr. Ray's USMA education expense not be recouped due to the uncertainty regarding his physical ability to obtain a commission, it cited to no record facts or evidence revealing or supporting the rationale Lieutenant General Bromberg actually used to reach his decision to reject the investigating officer's findings and recommendations.  This failure by the ABCMR to adduce any evidence in support of or any explanation for Lieutenant General Bromberg's decision is an agency action that is arbitrary, capricious, contrary to law, an abuse of discretion, and unsupported by substantial evidence.

## Count II

### (Breach of Contract – 28 U.S.C. § 1346(a)(2))

74.   The allegations in the preceding paragraphs are realleged as if fully set forth below.

75.  On or about June 30, 2008, in connection with his appointment as a member of the USMA Class of 2012, Mr. Ray entered into an express contract with the Army in which he agreed that if he failed to complete the course of instruction at the USMA due to his breach of the agreement, he was subject to various remedies including recoupment by the United States of the cost of Mr. Ray's USMA education (the "USMA service agreement").

76.  The USMA service agreement explicitly incorporated by reference as part of its terms and conditions Department of Defense and Army regulations that the Army was obligated to follow with regard to Mr. Ray's separation from the USMA or discharge from the Army. Paragraph 1.b. of the Statement of Policies section of the USMA service agreement provided that "Department of Defense Directive 1332.23, dated 19 February 1998, as implemented by Army regulations, provides the following direction concerning separation of cadets prior to the completion of the course of instruction … A cadet who is separated from the USMA because of demonstrated unsuitability, unfitness, or physical disqualification for military service will be discharged in accordance with the applicable Army regulations."  These regulations include, but are not limited to, AR 210-26, AR 612-205, AR 40-501, AR 635-40, and AR 635-200, as supplemented by ALARACT Message 159/2012.

77.  Effective February 13, 2013, Mr. Ray was erroneously separated from the USMA and discharged from the Army for misconduct pursuant to AR 612-205, Table 3, Rule 9.  Based on this separation for misconduct, effective October 2, 2013, the Army determined that Mr. Ray breached his USMA service agreement and was liable for and ordered to repay his USMA educational benefit in the amount of $164,953, with interest if applicable.

78.  Based on his purported debt to the United States for his USMA educational benefit, Mr. Ray has paid to the Defense Finance and Accounting Service approximately $2,450 during

the period from July 22, 2014 to the present.  In addition, Mr. Ray has agreed to continue to pay $150 per month to the Defense Finance and Accounting Service until his debt is extinguished or declared void.

79.  As alleged in the preceding paragraphs of this Complaint, the Army failed to follow its own regulations, including but not limited to AR 210-26, AR 612-205, AR 40-501, AR 635-40, and AR 635-200, as supplemented by ALARACT Message 159/2012, in connection with its separation of Mr. Ray from the USMA and his discharge from the Army.  Had the Army followed those regulations, Mr. Ray would have been separated from the USMA and discharged from the Army for medical reasons with an Honorable discharge certificate and he would have been placed on the Temporary Disability Retired List with retired pay as a result of the three disqualifying medical conditions with which he was diagnosed at the time of his administrative separation for misconduct.  Mr. Ray's separation and discharge for medical reasons would not have constituted a breach of his USMA service agreement and he would not be subject to recoupment by the United States of his USMA educational benefit.

80.  The Army's failure to follow Department of Defense and Army regulations in separating and discharging Mr. Ray was a breach of the USMA service agreement.  As a breaching party to the USMA service agreement, the Army is precluded from recovering contract damages from Mr. Ray, including but not limited to recoupment of his USMA educational benefit.  As a result of the Army's breach of contract, Mr. Ray has suffered monetary damages consisting of all payments he has made and is required to continue to make to the United States to liquidate his alleged debt in the amount of $164,953.

81.  Pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2), Mr. Ray is entitled to recover from the United States as monetary relief in the nature of contract damages all payments

he erroneously has been required to make and will be required to make in the future to the Defense Finance and Accounting Service related to the Army's wrongful determination to recoup his USMA educational benefit, in an amount not to exceed $10,000.  Mr. Ray expressly waives recovery of any such contract damages totaling more than $10,000.

Prayer for Relief

82.  WHEREFORE, it is respectfully requested that this Court enter judgment in favor of Plaintiff Geoffrey D. Ray and order the Defendant Patrick J. Murphy, in his official capacity as the Acting Secretary of the Army acting through the ABCMR, to correct Mr. Ray's military records to reflect that he was:  (a) separated from the USMA for medical reasons; (b) discharged from the Army with an Honorable discharge certificate; (c) placed on the Temporary Disability Retired List with a disability rating of 75 percent effective February 13, 2013; and (d) not in breach of his USMA service agreement such that his USMA educational expenses were or are not subject to recoupment by the United States.  It is further requested that this Court order the Defendant Patrick J. Murphy, in his official capacity as the Acting Secretary of the Army, to pay as contract damages to Mr. Ray all money he erroneously paid or pays, not to exceed $10,000, to the United States as a result of his purported debt to the United States arising from the Army's wrongful determination that he breached his USMA service agreement.

The Law Offices of Scott W. MacKay, LLC

Scott W. MacKay
Scott W. MacKay
D.C. Bar No. 414572
PO Box 295, 84 Indian Point Road
Hebron, New Hampshire 03241
(603) 412-2598
swmackay76@gmail.com
Attorney for Plaintiff Geoffrey D. Ray

Dated:  4/19/16